United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN M. CHAVEZ,<br><br>          Plaintiff,<br>     v.<br><br>BANK OF AMERICA CORPORATION ET. AL.,<br><br>          Defendants.<br>_____/ | No. C-10-0653 JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND MOTION TO STRIKE; DISMISSING COMPLAINT WITH LEAVE TO AMEND**<br><br>**[Docket No. 55]** |

## I.  INTRODUCTION

Plaintiff Steven Chavez ("Plaintiff") filed a class action complaint against Bank of America Corporation, FIA Card Services, National Association, Intersections Inc., Bank of America, N.A (hereafter "Defendants") on February 16, 2010, alleging that Defendants had enrolled him in an identify theft protection and credit monitoring service called "Privacy Assist" without his knowledge or consent. Plaintiff filed a First Amended Complaint (hereafter "FAC") asserting a claim under the California Business and Professions Code §17200, *et. seq.*, Consumer Legal Remedies Act, § 1750 *et seq.*, the Electronic Funds Transfer Act, 15 U.S.C. § 1693, *et. seq.*, as well as common law unjust enrichment and conversion claims. The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

Defendants Bank of America Corporation, FIA Card Services and Bank of America, N.A., filed a Motion to Dismiss and a Motion to Strike. *See* Docket No. 55. In the Motion, Defendants assert that all of Plaintiff's claims in the First Amended Complaint against BAC and FIA are

defective and should be dismissed and further, that Plaintiff's allegations regarding marketing and solicitation of Privacy Assist should be stricken. Plaintiff opposes the motion.

Pursuant to Local Rule 7-1(b), the Court finds this matter suitable for determination without oral argument. For the reasons stated below, the Court GRANTS Defendants' Motion to Dismiss WITH LEAVE TO AMEND. Defendants' Motion to Strike is DENIED. Plaintiff may file an amended Complaint as set forth in greater detail below.

## II.     BACKGROUND

### A.     The Allegations of the First Amended Complaint

Plaintiff has brought this action against Defendants Bank of America Corporation (BAC), FIA Card Services, N.A. ("FIA"), Bank of America, N.A. ("BANA") and Intersections, Inc., for unfair competition, violation of the Consumers Legal Remedies Act, violation of the Electronic Funds Transfer Act, conversion and unjust enrichment.

According to the First Amended Complaint ("FAC"), BAC operates its banking activities "primarily under two charters: Bank of America, N.A. and FIA Card Services, N.A." FAC ¶ 2. One of the products BANA offers its customers is a product called "Privacy Assist" which is a privately-branded product offered by Defendant Intersections. According to the FAC, Privacy Assist is a product that is offered by Intersections, yet the trade name is registered to Defendant FIA. FAC ¶¶ 3-4. In the Complaint, Plaintiff states that "the exact nature of the relationship between Defendants is unknown to Plaintiff at this time, but is readily ascertainable upon appropriate discovery." FAC ¶ 5.[1]     Privacy Assist is a service that provides identity theft protection to Bank of America's customers. FAC ¶ 6. There are three levels of identity theft protection offered, with different monthly fees ranging from $8.99 per month up to $18.99 a month for the full service, which includes unlimited access to credit reports online, internet monitoring of personal information from credit

---

[1] Plaintiff describes the relationship of the parties later in the Complaint as follows: "Since 2003, Privacy Assist has been a registered trade name of FIA, and it is offered to or placed upon the accounts of Defendants' customers as a service for identity theft protection provided by Intersections, under the guise of Privacy Assist being a Bank of America product." FAC ¶ 31.

2

bureaus, credit monitoring and alerts, as well as anti-virus software, anti key-logging software, public profile monitoring, identify theft insurance, among other protection measures. *Id.* Monthly charges for Privacy Assist are levied against customers' accounts using recurring electronic funds transfers ("EFT"). FAC ¶ 7. According to the Plaintiff, when a consumer requests termination of the service, including withdrawing authorization for the EFT payments, the withdrawal funds through EFT must cease. *Id.*

Plaintiff alleges that he never authorized Defendants to enroll him in the Privacy Assist services, nor did he authorize any EFTs from his account with Bank of America. *Id.* ¶ 9. Plaintiff further alleges that starting in or around September 2009, when he first noticed a charge for $17.99 for Privacy Assist on his Bank of America statement, he made repeated requests of Defendants to be removed from the service and to refund the unauthorized EFTs. FAC ¶¶ 9, 16, 37. Despite repeated requests to cease EFTs, Plaintiff alleges that Defendants "systematically continued to effectuate EFTs against Plaintiff and each Class Member on a monthly basis." FAC ¶ 9. Plaintiff alleges that when he first challenged the charge with Bank of America, the representatives with whom he spoke denied any affiliation with Privacy Assist. FAC ¶ 16. Plaintiff then attempted to challenge the unauthorized EFTs with the number listed for Privacy Assist. *Id.* "After several phone calls in an effort to cancel the service and have his money refunded, Privacy Assist continued to charge Mr. Chavez and refused to refund any of Mr. Chavez's money." *Id.* Plaintiff further alleges that the "unauthorized EFTs drained his bank account and caused him to incur several overdraft fees from Bank of America." *Id.* ¶ 38. After Plaintiff asked for Privacy Assist to be canceled, he received a letter from Privacy Assist alerting him that there had been suspicious activity on his account. *Id* at ¶ 39. Plaintiff continued to receive correspondence from Privacy Assist until November 2009. *Id.* Plaintiff further alleges that despite his having been charged for the service, he never received any form of computer anti-virus or anti-key logging software from Privacy Assist. *Id.* ¶ 40. Plaintiff alleges that prior to noticing Privacy Assist on his bank account statement, he had never heard of the service and had never been contacted by Privacy Assist, Intersections, or FIA

3

where "they identified themselves as such." *Id.* ¶ 41. Therefore, Plaintiff believes and alleges that he and other class members were signed up for Privacy Assist and had automatic EFTs deducted from their accounts without their knowledge, authorization or consent. *Id.* ¶ 42. Plaintiff alleges that Defendants shared personal account information of customers in order to effectuate the process of signing up customers without their express consent. *Id.* ¶ 43.

Plaintiff alleges that this unauthorized imposition of the Privacy Assist and EFTs is the direct result of aggressive marketing and solicitation through call centers maintained by Defendants throughout the country. *Id.* ¶ 8, 33. Defendants encourages sales representatives to "aggressively enroll customers unto Privacy Assist by subjecting them to 'sales blitzes' and penalizing those representatives who do not meet their sales quotas or fall with in the 'zero zone.'" FAC ¶ 33. Plaintiff alleges specifically that "Defendants often fail to monitor sales representatives working in this boiler-room environment resulting in customers being enrolled in Privacy Assist without their knowledge or full understanding of the terms and conditions." FAC ¶ 34. Further, when customers attempt to cancel the service "they are confronted with sales representatives who attempt to persuade the customer not to cancel or otherwise make it difficult for the customer to cancel." FAC ¶ 36. Plaintiff also alleges that he and other class members have never received refunds for the unauthorized EFTs. *Id.* ¶ 44.

### III.   ANALYIS

#### A.   Motion to Dismiss – Legal Standard

A complaint may be dismissed for failure to state a claim for which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). Fed. R. Civ. P 12(b)(6). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 127 S. Ct. 1955, 1969 (2007) (quoting *Car Carriers, Incl v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984) (internal quotations omitted; emphasis in original).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to

4

relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 1964-65.  For purposes of resolving the motion, courts accept all allegations of material fact as true and construe the complaint in the light most favorable to the nonmoving party.  *Nat'l Wildlife Fed'n v. Espy*, 4 F.3d 1337, 1380 (9th Cir. 1995).

### B. Application of the Law to the Facts of the Case

Plaintiff's Complaint contains five claims, one federal claim for violations of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 and four state law claims for violations of the Unfair Business Practices Act, Cal. Bus. & Prof. Code § 17200, violations of the Consumer Legal Remedies Act, California Civil Code § 1750 and the common law claims of Unjust Enrichment and Conversion.  In the Motion to Dismiss, Defendants argue that all claims should be dismissed against Defendants BAC and FIA because there are no facts alleging the connection between BAC and FIA and the wrongdoing of which Plaintiff complains.  Motion at 1.

#### 1. Plaintiff's Claims Against BAC

Plaintiff alleges that BANA "is a full-service bank" that "offers its customers … an identity theft protection and credit monitoring service called 'Privacy Assist,' a privately branded product provided by Defendant Intersections."  FAC ¶¶ 3, 18.  Plaintiff further alleges that he has a bank account with BANA, and that the unauthorized charge for Privacy Assist appeared on the statement related to that account.  *See* FAC ¶ 37.  With respect to Defendant BAC, Plaintiff alleges that BAC is a financial holding company that provides banking and financial services through two of its subsidiaries, BANA and FIA.  FAC ¶¶ 1-2.

Defendants argue that Plaintiff does not allege any facts to support the claim that BAC committed any of the acts complained of in the Complaint.   Defendants argue that no such allegations are possible "given [Plaintiff's] admission that BAC is a holding company."  Motion at 5  The Court is not entirely persuaded by this argument.  Although the Court agrees with Defendants

5

that Plaintiff's Complaint as currently pled fails to state sufficient facts to state a claim against BAC, the Court finds that amendment would not be futile.

First, despite the allegation that BAC is a holding company, Plaintiff's allegations lump all Defendants together in many paragraphs, and in describing his particular contact with Defendants does not separate BAC and BANA. In light of the allegation that BAC is a holding company, this group pleading is insufficient. Plaintiff may amend to allege specific facts giving rise to liability by BAC.

Second, Plaintiff alleges generally agency. *See e.g.*, ¶ 49. This general pleading is insufficient to hold a party responsible for the conduct alleged. Nor are there any sufficient allegations that would, if true, establish an exception to the rule that parent corporations and their subsidiaries are treated as separate legal entities. At the pleading stage, conclusory allegations that a corporate entity is the alter ego of the defendant are insufficient to survive a motion to dismiss. *See, e.g., Hockey v. Medhekar*, 30 F.Supp.2d 1209, 1211 n.1 (N.D.Cal.1998) (dismissing securities fraud claim against individual defendants on basis that allegation that corporations were alter egos for those defendants was insufficient to state a claim); *Hokama v. E.F. Hutton & Company, Inc.*, 566 F.Supp. 636, 647 (C.D.Cal.1983) (holding that plaintiff had failed to state a claim against individual defendant where complaint contained only conclusory allegation of alter ego status without alleging the elements of the doctrine).

Here, as currently pled, there are no facts alleged in the Complaint that could enable Plaintiff to proceed with claims against the parent corporation, Bank of America Corporation.

However, the Court cannot find that such an amendment would be futile. In order to survive a motion under Rule 12(b)(6), Plaintiff must include *factual* allegations in an amended Complaint sufficient to state a claim against BAC. Because Rule 15(a) mandates that leave to amend should be freely given when justice so requires, the rule is to be interpreted with "extreme liberality." *See United States v. Webb*, 655 F.2d 977, 979 (9th Cir.1981). Accordingly, the motion to dismiss all claims against BAC is GRANTED WITH LEAVE TO AMEND.

### 2. Plaintiff's Claims Against FIA

With respect to Defendant FIA, Plaintiff alleges that FIA "is a credit card lender and servicer, and it also provides insurance products through membership organizations and financial institutions." (FAC ¶ 20.) Defendants argue that Plaintiff does not allege that he ever had a credit card account with FIA or that he was ever charged for insurance, Privacy Assist, or any other service by FIA. Motion at 5. Although Plaintiff alleges that FIA "holds the trade name 'Privacy Assist,'" Defendants contend that Plaintiff does not allege any wrongdoing by FIA in connection with Privacy Assist. Motion at 5; FAC ¶ 20. The Court agrees. Plaintiff has made allegations regarding his contacts with Privacy Assist and his attempts to have Privacy Assist canceled. The only allegations against FIA are that it is the registered owner of the trade name, Privacy Assist. First, allegations of ownership of a trade name is not sufficient to state a cause of action. Second, as with the claims against BAC, Plaintiff's group pleading is insufficient. There are no factual allegations that specifically complain of any conduct by FIA.[2] The motion to dismiss all claims against FIA is GRANTED WITH LEAVE TO AMEND.

### C. Motion to Strike – Legal Standard

Under Fed.R.Civ.P. 12(f), "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." However, motions to strike under Rule 12 are generally disfavored. *Chiron Corp. v. Abbott Labs.*, 156 F.R.D. 219, 220 (N.D. Cal. 1994). "Motions to strike are generally not granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *LeDuc v. Kentucky Central Life Ins. Co.*, 814 F.Supp. 820, 830 (N.D.Cal. 1992).

---

[2] In his opposition, Plaintiff argues that "publicly available information on BANA's website shows FIA as the owner of the Privacy Assist trade name, and indicates that FIA is directly responsible for the Privacy Assist service, and possibly the administrator of the product on behalf of Bank of America, its parent company." Opp. at 5. These allegations are found nowhere in the Amended Complaint.

7

**D.  Application of the Law to the Facts of the Case**

In the motion to strike, Defendants argue that Plaintiff does not allege that he was ever subjected to the aggressive marketing and soliciting campaigns of which he complains in his Complaint, and cannot therefore represent individuals who might assert claims based upon those practices. Motion at 1. As such, Defendants argue that all allegations regarding the marketing, sale and solicitation of Privacy Assist should be stricken from the Complaint as immaterial and impertinent to Plaintiff and the putative class because they have no bearing on Plaintiff or the class he seeks to represent. *Id.* Specifically, Defendants seek to have the Court strike the following allegations from the First Amended Complaint:

- "Privacy Assist is solicited by Defendants through call centers throughout the country" (FAC ¶ 33),
- "Defendants encourage sales representatives to aggressively enroll customers into Privacy Assist by subjecting them to 'sales blitzes'" (FAC ¶ 33),
- Defendants "penaliz[e] those representatives who do not meet their sales quotas or fall within the 'zero zone'" (FAC ¶ 33),
- "Defendants often fail to monitor sales representatives working in this boiler-room environment resulting in customers being enrolled in Privacy Assist without their knowledge or full understanding of the terms and conditions" (FAC ¶ 34),
- "Defendants further fail to maintain adequate procedures to ensure that customers who request non-solicitation status are not contacted by Privacy Assist sales representatives" (FAC ¶ 35), and
- "[A]lthough customers can purportedly cancel Privacy Assist within 30 days of enrollment without incurring any charges, customers are not informed that the 30 day window begins when Privacy Assist is initially solicited to the customer" (FAC ¶ 36).

Motion at 4. Defendants argue that "[p]laintiff was not the subject of aggressive sales tactics; to the contrary, he claims that he was never contacted at all before the Privacy Assist charge appeared on

8

his bank statement." Motion at 5. Because Plaintiff claims that he never enrolled in the program in the first place, Defendants argue, he cannot claim that he was subjected to the Defendants' allegedly aggressive marketing and solicitation campaigns, nor could he have been misled as to whether the 3o-day cancellation window ran from the date of solicitation or the date when the enrollment documentation arrived in the mail. *Id.*

The Court is not persuaded by these arguments. First, motions to strike allegations from a complaint are generally disfavored. *Ellison v Autozone Inc.*, 2007 WL 2701923 (N.D. Cal. Sept. 13, 2007). Moreover, in his opposition, Plaintiff explains that Defendants provided him with a voice-recording, which is purportedly Plaintiff's voice agreeing to the terms and conditions of Privacy Assist. Although Plaintiff denies that this recording is authentic, he argues that Defendants' insistence that Plaintiff was in fact solicited for Privacy Assist and consented to it is further proof that allegations regarding Defendants' solicitation and marketing of Privacy Assist are in fact relevant to this case. Opp. at 2. The Court cannot find – at this stage of the case – that the allegations regarding Defendants' sales and marketing practices of Privacy Assist are irrelevant to the claims in this case. The Motion to Strike allegations from the Complaint is DENIED.

## IV.  CONCLUSION

For the foregoing reasons, the First Amended Complaint is DISMISSED WITH LEAVE TO AMEND as to the claims against BAC and FIA. Defendants' Motion to Strike is DENIED. Plaintiff should file a Second Amended Complaint addressing *only* the deficiencies cited above with respect to BAC and FIA within 10 days of the date of this Order.

IT IS SO ORDERED.

Dated: January 10, 2011

JOSEPH C. SPERO
United States Magistrate Judge

9