**United States District Court**
For the Northern District of California

1

2

3

4                    UNITED STATES DISTRICT COURT

5                    NORTHERN DISTRICT OF CALIFORNIA

6   STEVEN CHAVEZ,                          Case No.  C 10-653 JCS

7              Plaintiff(s),

8        v.                                 **ORDER GRANTING IN PART
                                            DEFENDANT INTERSECTION INC.'S
                                            MOTION TO STAY LITIGATION
9   BANK OF AMERICA,                        PENDING ARBITRATION**

10             Defendant(s).                **[Docket Nos. 96]**
    _____/

11

12  **I.      INTRODUCTION**

13          Plaintiffs Patricia Vanhorn, Richard Albaugh and Patrick Mulcahy have filed this action

14  alleging state and federal claims arising out of their enrollment in an identity theft protection

15  program called "Privacy Assist."  They have claim to have been enrolled and charged for this service

16  without their consent.  Defendant Intersections Inc. ("Intersections"), brings the present motion to

17  stay litigation pending arbitration, arguing that the Plaintiffs are bound by agreements with

18  Defendants Bank of America, N.A. ("BANA") and FIA Card Services, N.A. (FIA")  and that

19  Intersections, as a third party beneficiary to those agreements, may enforce an arbitration agreement

20  in this case.  Plaintiffs oppose motion.  The parties have consented to the jurisdiction of this court.

21  A hearing was held on September 30, 2011 at 9:30 a.m., at which the parties appeared.

22          The Court has reviewed the papers submitted and the arguments of counsel at the hearing.

23  For the reasons explained below, the Motion is GRANTED IN PART with respect to Plaintiffs

24  Patricia VanHorn and Patrick Mulcahy.  With respect to Plaintiff Richard Albaugh, the Court

25  concludes that there is a material factual dispute on the issue of consent to enter into a contract

26  containing an arbitration provision.  Accordingly, the Court will hold a one day bench trial on this

27  issue, which is scheduled for January 17, 2012 at 8:30 a.m.

28

**United States District Court**
For the Northern District of California

1   **II.    BACKGROUND**

2        **A.    Procedural Background**

3        On April 18, 2011, Plaintiffs Patricia VanHorn, Richard Albaugh and Patrick Mulcahy

4   became lead Plaintiffs by filing a Third Amended Complaint ("TAC") (*see* Docket No. 85) in this

5   matter.  *See* Docket No. 77.  With the TAC, these above-named Plaintiffs made their first

6   appearance in the case; Plaintiff Steven Chavez is no longer a Plaintiff in the case.

7        The TAC alleges that the Defendants signed up Plaintiffs and Class Members for an identity

8   theft program offered by Bank of America called "Privacy Assist" without their knowledge or

9   permission.  As a result, Plaintiffs allege that Defendants have violated California's Unfair

10  Competition Law and the California Legal Remedies Act, the federal Electronic Funds Transfer Act,

11  and the common-law rules against unjust enrichment and conversion.  ¶¶ 66-105.

12       Soon after the filing of the TAC, Intersections informed Plaintiffs' counsel that based on the

13  existence of arbitration agreements with each of the named parties, Intersections would move to

14  enforce those agreements.  On May 6, 2011, at a case management conference, the Court vacated all

15  scheduled dates in the lawsuit and ordered the parties to meet and confer and submit a proposed

16  briefing schedule for the proposed arbitration motion.  *See* Dkt. No. 92.  This motion followed.

17       **B.    Intersections' Motion to Stay**

18       Pursuant to Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § § 1-16,

19  Intersections moves to stay the present litigation pursuant to a written arbitration agreement.

20       Intersections argues that each Plaintiff in this case agreed to enroll in Privacy Assist with

21  Intersections – the service provider – as intended beneficiary in agreements between Plaintiffs and

22  Defendants BANA and FIA.  Intersections argues that the Terms of Use governing this service were

23  mailed to each Plaintiff, including a notice that enrollment in the program would be construed as

24  acceptance of the contract and that this notice further contained a notice that any disputes would be

25  settled by an arbitrator through individual proceedings.  Based upon this "enforceable contract"

26  Intersections argues, the Court should stay the current litigation in favor of the parties' arbitration.

27  Intersections further argues that if this Court itself decides the validity of the arbitration clause in

28  this case, the controlling authority is *AT&T Mobility LLC v. Concepcion*, __ U.S. __, 131 S.Ct.

United States District Court

For the Northern District of California

1   1740, 1750, L.Ed.2d 742 (2011), in which the Supreme Court overturned California's class-action

2   waiver bar.

3        Intersections first argues that the arbitration clause is enforceable and that it, as intended

4   third party beneficiary, may enforce the arbitration agreement in this case.  Intersections next argues

5   that any question as to the scope or validity of the arbitration in this case must be decided by the

6   arbitrator, not this Court.  If this Court decides validity, the agreement is valid and enforceable under

7   any applicable state law, whether the Court decides to apply California law, Delaware law (as

8   Intersections argues it should) or Florida law.

9        Plaintiffs oppose the motion.  Plaintiffs respond that they cannot be compelled to arbitrate

10  when their claims are predicated on a lack of consent to the underlying contract that contains the

11  arbitration provision.  Plaintiffs next argue that the agreements between Privacy Assist customers

12  and Bank of America are unenforceable under a settlement agreement entered into between BANA

13  and its customers in unrelated litigation, *Ross et al., v. Bank of America N.A., et. al.*, 05-CV-07116

14  (WHP) (S.D.N.Y).  *See* Docket No. 99-2 (*Ross* Settlement Agreement).  Plaintiffs further argue that

15  nothing in the Supreme Court's recent *Concepcion* decision compels a contrary result, for Plaintiffs

16  do not seek to invalidate the arbitration clause under the now disapproved California policy

17  regarding the unconscionability of class action waivers, but rather, seek to void it under general

18  unconscionability standards.  Plaintiffs argue that under any state standard that may be applied here

19  – California, Delaware or Florida – the arbitration clause is unconscionable.  Plaintiffs further argue

20  that Intersections is not a party to the contracts at issue, and as such, cannot enforce its terms.

21  Finally, Plaintiffs argue that Intersections has waived its right to compel arbitration due to the fact

22  that it has litigated this case for over a year.

23  **III.    ANALYSIS**

24       **A.    Legal Standard – Federal Arbitration Act**

25       Section 4 of the Federal Arbitration Act permits "a party aggrieved by the alleged failure,

26  neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any

27  United States District Court ... for an order directing that ... arbitration proceed in the manner

28  provided for in [the arbitration] agreement." 9 U.S.C. § 4.  Upon a showing that a party has failed to

United States District Court

For the Northern District of California

1  comply with a valid arbitration agreement, the district court must issue an order compelling

2  arbitration.  *See Cohen v. Wedbush, Noble Cooke, Inc.*, 841 F.2d 282, 285 (9th Cir.1988).

3         The FAA espouses a general policy favoring arbitration agreements.  *See Moses H. Cone*

4  *Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

5  In determining whether to issue an order compelling arbitration, the Court may not review the merits

6  of the dispute, but must limit its inquiry to:  (1) whether the arbitration agreement is governed by

7  Chapter One of the Federal Arbitration Act (rather than Chapter Two or Chapter Three); (2) whether

8  the contract containing the arbitration agreement evidences a transaction involving interstate

9  commerce, (3) whether there exists a valid agreement to arbitrate, and (4) whether the dispute falls

10  within the scope of the agreement to arbitrate.  9 U.S.C. §§ 2, 202, and 302; *see Nicaragua v.*

11  *Standard Fruit Co.*, 937 F.2d 469, 477-78 (9th Cir. 1991), *cert denied*, 503 U.S. 919, 112 S.Ct.

12  1294, 117 L.Ed.2d 516 (1992) (citing *Prima Paint's* clear directive that courts disregard surrounding

13  contract language and "consider only issues relating to the making and performance of the

14  agreement to arbitrate, *Prima Paint v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801,

15  18 L.Ed.2d 1270 (1967)); *Ecuador v. Chevron Texaco Corp.*, 376 F. Supp. 2d 334, 347 (S.D.N.Y.

16  2005) (noting the jurisdictional distinctions between Chapters One, Two and Three of the FAA).  If

17  the answer to each of these questions is affirmative, then the Court must order the parties to arbitrate

18  in accordance with the terms of their agreement.  9 U.S.C. § 4.

19         Although the FAA provides that arbitration agreements generally "shall be valid, irrevocable,

20  and enforceable," courts may decline to enforce them when grounds "exist at law or in equity for the

21  revocation of any contract."  9 U.S.C. § 2.  "Thus, generally applicable contract defenses, such as

22  fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without

23  contravening" federal law.  *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652,

24  134 L.Ed.2d 902 (1996).  In interpreting the validity and scope of an arbitration agreement, the

25  courts apply state law principles of contract formation and interpretation.  *See Wolsey, Ltd. v.*

26  *Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir.1998).  Accordingly, the Court reviews the

27  arbitration agreement here in light of the "liberal federal policy favoring arbitration agreements,"

28  *Moses H. Cone*, 460 U.S. at 24, and considers its enforceability according to California's laws of

1    contract formation. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920

2    (1995).

3        When evaluating a motion to compel arbitration, courts treat the facts as they would when

4    ruling on a motion for summary judgment, construing all facts and reasonable inferences that can be

5    drawn from those facts in a light most favorable to the non-moving party. *See Perez v. Maid*

6    *Brigade, Inc*., 2007 WL 2990368 at \*3 (N.D. Cal. Oct. 7, 2007) (Illston, J.).

7        **B.    Application of the Law to the Facts of the Case**

8            **1.    Whether the Court or the Arbitrator Decides the Threshold Issue of
                    Consent to Arbitrate**

9

10       It is well settled that "[a]rbitration is a matter of contract and a party cannot be required to

11   submit any dispute which he has not agreed so to submit." *AT&T Tech., Inc. v. Commc'n. Workers*

12   *of Am.*, 475 U.S. 643, 648 (1986). Thus, when a party disputes "the making of the arbitration

13   agreement," the FAA requires that the "court [] proceed summarily to the trial thereof" before

14   compelling arbitration under the agreement. *See Sanford v. MemberWorks*, Inc., 483 F.3d 956 (9th

15   Cir. 2007) (citing 9 U.S.C. § 4). The court's inquiry encompasses "not only challenges to the

16   arbitration clause itself, but also challenges to the making of the contract containing the arbitration

17   clause." *Sanford*, 483 F.3d at 962 (citing *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925

18   F.2d 1136, 1140-41 (9th Cir. 1991). As the Ninth Circuit clarified in *Sanford*, "[i]ssues regarding

19   the *validity* or *enforcement* of a putative contract mandating arbitration should be referred to an

20   arbitrator, but challenges to the *existence* of a contract as a whole must be determined by the court

21   prior to ordering arbitration." *Id*. at 962 (emphasis in original).

22       Here, the parties disagree as to whether a contract was formed between Plaintiffs and

23   Defendants. Plaintiffs contend that they were not aware that any contract had been formed. The

24   Court finds that it, not the arbitrator, must decide this threshold issue.

25

26

27

28

United States District Court

For the Northern District of California

### 2.    Waiver

The next threshold issue for the Court to decide is whether, as Plaintiffs argue, Intersections has waived its right to pursue arbitration by litigating this case for over a year.  The Court finds no waiver here.

"The right to arbitration, like any other contract right, can be waived."  *United States v. Park Place Assocs.*, 563 F.3d 907, 921 (9th Cir. 2009).  The Ninth Circuit has made it clear, however, that "waiver of the right to arbitrate is disfavored because it is a contractual right, and thus any party arguing waiver of arbitration bears a heavy burden of proof."  *Id.* (internal quotation marks and citations omitted).  In order for Plaintiffs here to establish that Intersections has waived its right to arbitrate, they must show: "(1) knowledge of an existing right to compel arbitration, (2) acts inconsistent with that existing right, and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts."  *Id.*

The Court finds that Plaintiffs have failed to satisfy the first requirement.  The Ninth Circuit has held that there can be no "existing right to arbitrate" if it would have been futile to pursue arbitration "under the then-prevailing law in this circuit."  *Letizia v. Prudential Bache Secs., Inc.*, 802 F.2d 1185, 1187 (9th Cir. 1986); *see also Kaltwasser v. AT&T Mobility LLC*, 2011 WL 4381748 (N.D. Cal., Sept. 20, 2011).  As Judge Fogel explained in *Kaltwasser*, "Before the Supreme Court's recent decision in *Concepcion*, adhesive consumer contracts requiring bilateral agreement were generally held to be invalid under California's *Discover Bank* rule."  *Id.* at *7.  Thus, as in *Kaltwasser*, the Court finds that it would have been "futile" for Intersections to pursue arbitration under the circumstances of this case.  Because it is arguable that Intersections did not have a right to compel arbitration prior to *Concepcion*, and then promptly moved to do so after the Supreme Court decided *Concepcion*, the Court finds that Intersections has not waived or abandoned its arbitration rights.  *See Kaltwasser*, 2011 WL 4381748 at *8.

Plaintiffs argue that Intersections should be precluded from pursuing arbitration because it "aggressively employed the litigation machinery" and that it has participated in this litigation for more than a year.  Opp. at 18.

The Court is not persuaded by this argument.  The named Plaintiffs only became part of this case with the filing of the Third Amended Complaint in April 2011.  Thus, Plaintiffs' arguments as

United States District Court

For the Northern District of California

1    to Intersections' involvement in the litigation against a Plaintiff no longer named in the case, Steven

2    Chavez, are not relevant.  Only nine days after the filing of the Third Amended Complaint, the

3    Supreme Court decided *Concepcion*, which significantly altered the legal landscape with respect to

4    California policies regarding class action waivers and arbitration.  Soon thereafter, Intersections

5    notified Plaintiffs of its intent to pursue its arbitration rights.  No trial date has been set.  The Court

6    finds no waiver of Intersections' right to attempt to pursue its right to arbitrate in this case.

7                        **3.      Whether the *Ross v. Bank of America* Settlement Precludes Intersections
                                   From Enforcing the Arbitration Provision**
8

9            Plaintiffs argue that a settlement agreement in an unrelated case against BANA and FIA

10   precludes Intersection's motion to compel arbitration.  There, Defendants BANA and FIA agreed

11   with their cardholders not to enforce the arbitration provisions contained in cardholder agreements

12   with their customers.  *See* Docket No. 99-2.  Plaintiffs point to no specific provision in the

13   settlement agreement that would extend to the present situation – a separate contract between

14   customers and BANA, FIA for a service.  The *Ross* settlement agreement specifically refers to pre-

15   existing or then existing "Cardholder Agreements."  *Id.* at ¶ 2.  Plaintiffs fail to explain how a

16   separate contract for additional services – Privacy Assist – can be construed under this contract to

17   constitute a "Cardholder Agreement."  Accordingly, the Court concludes that Intersections is not

18   precluded from pursuing arbitration on the basis of the *Ross* settlement agreement between BANA,

19   FIA and its cardholders.

20                        **4.      Whether Intersections, as a Non-Party May Enforce the Terms of the
                                   Agreements**
21

22           Plaintiffs argue that Intersections is not a party to the Privacy Assist "Terms of Use"

23   agreements between BANA, FIA and its customers.  Opp. at 6.  As such, Plaintiffs argue that

24   Intersections is precluded from seeking to enforce any of the contract provisions, including

25   arbitration.

26           Plaintiffs' argument is unpersuasive.  As Plaintiffs concede in their opposition brief, "a

27   contract may bind non-parties such as an intended third party beneficiary."  *Id.* (citing *Comedy Club,*

28   *Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1287 (9th Cir. 2009) *cert. denied*, 130 S.Ct. 145 (U.S.

     2009) (internal quotations omitted).  Plaintiffs nevertheless argue that in the absence of such

                                                      7

"extraordinary relationships" arbitration clauses generally do not bind third parties and that no such relationship exists here.  Plaintiffs are incorrect.  The Terms of Use explicitly references Intersections as a third party beneficiary under the contract and identifies Intersections as the provider of the service being offered to BANA's customers.  *See* Docket No. 96-5. ("Master Policy Holder" means Intersections Inc." and "This Policy shall be for the sole use and benefit of the Insured Persons and the Master Policy Holder.").

Accordingly, the Court concludes that Intersections may seek to enforce the contract's terms, including the arbitration provision.  *See Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) ("[N]onsignatories can enforce arbitration agreements as third party beneficiaries.")

### 5.    Whether there Exists an Enforceable Agreement to Arbitrate  – Lack of Consent

Plaintiffs argue that they cannot be compelled to arbitrate absent an agreement between the parties to arbitrate.  Plaintiffs contend that their defense of lack of consent to the underlying contract in this case precludes Intersection's attempt to compel arbitration.  Plaintiffs also contend that, even if there was consent to some contract, it did not include the arbitration provision.  Intersections argues that Plaintiffs agreed to enroll in Privacy Assist over the telephone and then accepted the terms of the service agreement that were mailed to them when they failed to cancel their 30-day trial period of the Privacy Assist service.  By continuing to accept the services without canceling, Intersections argues that Plaintiffs agreed to the terms and conditions contained in the Terms of Use, including the arbitration clause.

As an initial matter, the Court rejects any suggestion that Plaintiffs are not bound by the arbitration clause or the Terms of Use based purely on the fact that the Plaintiffs did not read the contract or its terms.  The law is clear that a party entering a contract has responsibility for learning its terms and that each and every term need not be explained orally to a party.  *Higgs v. Automotive Warranty Corp. of America*, 134 F. Appx. 828, 831 (6th Cir. 2005); *see also, Murphy v. DirecTV, Inc*, 2011 WL 3319574 (C.D. Cal. Aug. 2, 2011) (finding plaintiff bound by contract based on plaintiff's manifestation of consent by acceptance of Customer Agreement containing arbitration provision, even where plaintiff did not read the document).

8

1    Intersections invokes the common law "mailbox rule," which raises a presumption of mail

2 receipt unless the intended recipients can rebut the presumption by producing credible, probative

3 evidence of non-receipt. *See Schikore v. BankAmerica Supp. Ret. Plan*, 269 F.3d 956, 961 (9th Cir.

4 2001) ("We have held a sworn statement is credible evidence of non-receipt to rebut the

5 presumption.").[1]  However, the presumption is weaker in a case, such as this one, where delivery is

6 made by regular mail as opposed to certified mail. *See e.g., Salta v. I.N.S.*, 314 F.3d 1076, 1079 (9th

7 Cir. 2002).

8    Plaintiffs argue that they have denied receipt of the Terms of Use and that once a plaintiff

9 denies receipt, the mail box rule presumption "bubble" "bursts." *See* Pl.'s Opp. at 7 (citing *Nunley v.*

10 *City of Los Angeles*, 52 F.3d 792, 792-93 (9th Cir. 1995) and *McCarnes v. Dexter*, 549 F.Supp.2d

11 1204, 1207 (C.D. Cal. 2008).  Plaintiffs cite *Nunley* for the proposition that a "specific factual denial

12 of receipt" by the addressee is sufficient to rebut the presumption of receipt.  The rule articulated in

13 *Nunley* does not apply beyond its procedural and factual setting.  In *Nunley*, the court held that a

14 specific factual denial of receipt was sufficient to rebut the mailbox rule's presumption in the

15 context of an addressee's motion for an extension of time to file an appeal made under Federal Rule

16 of Appellate Procedure, Rule 4(a)(6).  *See Schikore*, *supra* at 961.  Plaintiff's reliance on *Nunley*,

17 *McCarnes* and other cases in the context of FRAP 4(a)(6) is unavailing.  As the above authorities

18 make clear, in the ordinary common law context, when there is evidence of mailing, it can only be

19 rebutted by actual evidence of non-receipt.

20    The Court will address the evidence proffered by each party regarding(1) consent to a

21 contract and (2) the question of their purported receipt of the contract containing the arbitration

22 provision by mail.

---

26    [1]Intersections argues that the presumption may only be overcome by "clear and convincing
27 evidence" that the mailing was not in fact accomplished. *See* Def.'s Reply at 4 (citing *In re Bucknum*,
951 F.2d 204, 206-207 (9th Cir. 1991) ("The presumption can only be overcome by clear and
28 convincing evidence that the mailing was not, in fact, accomplished.").  Defendant's reliance on
*Bucknum* and other cases in the bankruptcy context is unavailing as those cases address the Bankruptcy
Code and Rules related to bankruptcy filings and the Ninth Circuit has stated that the clear and
convincing standard is applicable in that context. *See Schikore*, *supra*, at 961.

United States District Court

For the Northern District of California

### a.     Patricia VanHorn

Defendant has submitted evidence in the form of a .wav file containing a recording of a telephone conversation between the Privacy Assist sales caller and Plaintiff Patricia VanHorn, as well as a transcript prepared by Defendant of this recording. *See* Declaration of Allen John Fischer ('Fischer Decl.") at ¶ 4. During this telephone conversation, Plaintiff VanHorn agrees to enroll in Privacy Assist. Defendant also has submitted evidence that the Terms of Use contract containing the arbitration provision was mailed to Plaintiff VanHorn in the ordinary course of the Privacy Assist enrollment process, and that it was not returned as undeliverable. Declaration of Andrew Gerry ("Gerry Decl.") at ¶¶ 7-16.

Plaintiff Vanhorn states that she has never seen or received any documentation from Privacy Assist, including any Terms of Use ("Terms"). *See* Declaration of Patricia VanHorn ("VanHorn Decl.") at ¶ 5. Upon discovering the Privacy Assist charges, Ms. Vanhorn states that she called to cancel and requested a refund of all unauthorized Privacy Assist charges, to no avail. *Id.* at ¶¶ 7-9. Plaintiff VanHorn states that she was informed that she could either obtain a refund for only one month of the charges or wait 6-8 weeks to get the voice recorded authorization for her enrollment. *Id.* at ¶ 7. Although she denies having agreed, Ms. VanHorn has no recollection of the call or of any mail from Privacy Assist. She states in her declaration that she does "not recall ever receiving any telephone calls or mail from Privacy Assist" and that she has "never seen the "terms of Use" for Privacy Assist. VanHorn Decl." at ¶ 5. Plaintiff VanHorn concludes that she "did not sign up for or consent to be charged monthly for the Privacy Assist Service, nor would [she] have agreed to such a service." *Id.* at ¶ 6.

### b.     Richard Albaugh

Defendant has submitted evidence that on August 13, 2009, Plaintiff Albaugh called Bank of America in order to change the address associated with his credit card and in so doing agreed to enroll in Privacy Assist over the telephone. *See* Declaration of Andrew Reilly ("Reilly Decl."). Further, defendant has submitted evidence that the Terms of Use contract containing the arbitration provision was mailed to Plaintiff Albaugh in the ordinary course of the Privacy Assist enrollment process, and that it was not returned as undeliverable. *See* Declaration of Andrew Gerry ("Gerry Decl.") at ¶¶ 7-16.

10

United States District Court

For the Northern District of California

1    In response, Plaintiff Richard Albaugh has submitted a declaration in support of the

2    argument that he never consented to enroll in Privacy Assist.  Unlike Ms. VanHorn's declaration,

3    Plaintiff Albaugh's declaration is unequivocal on the issue of lack whether he received the contract.

4    Plaintiff Albaugh states: "I never received any mail from Privacy Assist until after I had already

5    called to cancel the service."  Declaration of Richard Albaugh ("Albaugh Decl.") at ¶ 7.  Plaintiff

6    Albaugh states that despite having requested a refund for the unauthorized Privacy Assist charges,

7    he has not been granted one.  *Id*. at ¶ 9.

8                              **c.     Patrick Mulcahy**

9    Defendant has submitted evidence that Plaintiff Mulcahy had agreed to enroll in Privacy

10   Assist on three separate occasions.  *See* Gerry Decl. ¶¶ 13-15.  As with Plaintiffs VanHorn and

11   Albaugh, Defendant has submitted evidence that the Terms of Use contract containing the arbitration

12   provision was mailed to Plaintiff Mulcahy in the ordinary course of the Privacy Assist enrollment

13   process, and that it was not returned as undeliverable.  Declaration of Andrew Gerry ("Gerry Decl.")

14   at ¶16.

15   Plaintiff Mulcahy has not submitted a declaration in opposition to the motion.  As such there

16   is no evidence to dispute the evidence proffered by the Defendant that Mr. Mulcahy did in fact

17   consent to and enroll in, Privacy Assist, including the agreement to arbitrate.

18                              **d.     Analysis – Consent**

19   There is no disputed issue of material fact with respect to whether Plaintiffs VanHorn and

20   Mulcahy consented to a contract with Defendants by phone.  Defendant has submitted evidence

21   showing consent.  Plaintiff Mulcahy has submitted no evidence in opposition.  Plaintiff VanHorn,

22   while she states in a conclusory fashion that she did not so consent, admits that she has no

23   recollection regarding any call with Defendants.  Her lack of recollection is not sufficient to raise an

24   issue of material fact where the recording and transcript of the phone call demonstrate both that the

25   call occurred and that she agreed to enroll in the program.

26   The Court also finds that Plaintiffs VanHorn and Mulcahy have not satisfied their burden of

27   producing sufficient evidence of non-receipt in order to rebut the presumption that arises from the

28   mailing of the contract terms in this case.  First, Mulcahy has not offered any declaration and

therefore Defendant's evidence is unrebutted.  Second, with respect to Plaintiff VanHorn, there is no

United States District Court

For the Northern District of California

1   denial of receipt.  Rather, Ms. VanHorn states that she "does not recall" receiving anything in the

2   mail regarding Privacy Assist.  This is not the sort of reliable evidence necessary to defeat the

3   presumption of receipt by mail, even under the lower standard advocated by Plaintiffs here.  *See e.g.*,

4   *Perez,* 2007 WL 2990368 (N.D. Cal., Oct. 11, 2007) (finding that plaintiff had not met her burden ro

5   prove that she did not sign the agreement including arbitration provision where "[p]laintiff does not

6   unequivocally deny signing the document" by stating that she "did not recall signing these

7   documents."); *see also Murphy v. DirecTV*, 2011 WL 3319574 at *1 (C.D. Cal., Aug. 2, 2011)

8   (finding defendants' proof of mailing sufficient to defeat plaintiffs' claims of never having seen, "let

9   alone signed, the Customer Agreement that contain[ed] the Arbitration Provision."); *FEC v.*

10   *Toledano*, 317 F.3d 939, 950 (9th Cir. 2002) ("[F]ailure to remember and lack of knowledge are not

11   sufficient to create a genuine dispute.").

12           As a result of their consent to the contract, and the receipt of the terms, VanHorn and

13   Mulcahy are bound by the arbitration provision.

14           Plaintiff Albaugh presents a closer case because his declaration contains unequivocal denials

15   of consent and of receipt.  Mr. Albaugh states that he did not consent, and did not receive anything

16   in the mail regarding Privacy Assist until he called to cancel the service.  Albaugh Decl. at ¶ 7.  It is

17   not clear that this evidence, standing alone, would be sufficient.  The mailbox rule requires more

18   than a mere statement of denial.  *See Schikore*, 269 F.3d at 961 (noting that the mailbox rule is

19   intended to avoid "swearing contests" between parties on the question of receipt by mail;

20   distinguishing case law in unrelated context where mere denial of receipt was held sufficient).  In the

21   present case, however, there is additional evidence beyond Mr. Albaugh's mere denial of receipt.

22   Mr. Albaugh states that when he did in fact reach Privacy Assist to complaint about the unauthorized

23   charges, he was told on the telephone that his address was incorrect.  Albaugh Decl. at ¶ 6 ("When I

24   called to cancel Privacy Assist, I was informed by the customer service representative that they had

25   been trying to reach me by mail for some time.  The representative confirmed that Privacy Assist

26   was sending mail to an address that had been out of date for over two years.  However, the correct

27   current address was listed for the credit card that was being charged for the service.")

28

1        Although a close question, the Court finds that this evidence[2] is sufficient to create a material

2   issue of fact on whether (1) Albaugh agreed to the contract in the first place and (2) whether that

3   contract contained an arbitration provision.

4        Accordingly, the Court concludes that there is a material dispute of fact as to Plaintiff

5   Albaugh, and that VanHorn and Mulcahy consented to the contract which contained an arbitration

6   clause.

7              **6.**       **Enforceability of the Arbitration Clause - Unconscionability**

8        The next question is whether the arbitration agreement that is contained in the contract is

9   unenforceable because it is unconscionable.

10        Ordinarily, where there is a conflict of laws, the court must determine which state's law

11   should be applied to decide the question of unconscionability.  Intersections argues that Delaware

12   law must be applied to this question because of the choice-of-law provision in the alleged contract,

13   and Plaintiffs argue that California law must apply because for two of the three Plaintiffs, Albaugh

14   and Mulcahy, California is the forum state for the alleged contract (Plaintiffs argue that in the case

15   of Plaintiff VanHorn, Florida law should apply, which according to Plaintiffs produces the same

16   result).  *See* Pl.'s Opp. at 11.  Further, Plaintiffs argue, California has the most "significant

17   relationship" to the transaction and the parties.  *Id.* at 12.  "If a contract is unconscionable, under

18   California law courts may refuse to enforce it.  *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165,

19   1170 (9th Cir. 2003).  "To be unenforceable, the arbitration clause must be both procedurally and

20   substantively unconscionable, but not necessarily to the same degree."  *Roberts v. Synergistic Int'l.*

21   *LLC*, 676 F. Supp. 2d 934 (E.D. Cal. Oct. 30, 2009) (citing *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th

22   Cir. 2003).

23        The Court concludes that it need not decide this issue for under any of the pertinent state

24   laws – California, Florida or Delaware – Plaintiffs fail to establish that the arbitration provision is

25   unconscionable.  For the sake of this discussion, the Court will apply California law.

26        The Court first addresses Plaintiffs' arguments that can best be characterized as grounded in

27   California public policy.  Specifically, Plaintiffs argue that claims such as those in the present case

28

---

[2]The Court is not persuaded by Intersections' objection that this evidence is "inadmissible hearsay." *See* Def's Reply at 5.  It constitutes a party admission.

United States District Court
For the Northern District of California

where the potential monetary recovery is small make compelled arbitration provisions substantively unconscionable. While this argument certainly has appeal in a case such as this one – where the arbitration fees may exceed the potential recovery – the argument has been rejected by the Supreme Court. *AT&T v. Concepcion*, __ U.S. __ , 131 S.Ct. 1740, 179 L.Ed. 2d 742 (2011). In *Concepcion*, the Supreme Court addressed the validity of a rule articulated by the California Supreme Court in *Discover Bank v. Superior Court*, 36 Cal.4th 148, 30 Cal.Rptr.3d 76, 113 P.3d 1100 (2005). In *Discover Bank*, the California Supreme Court held that an arbitration agreement that is part of a consumer contract of adhesion and that contains a class-action waiver is, as a general matter, unconscionable and should not be enforced. *Id.* at 162–63, 30 Cal.Rptr.3d 76, 113 P.3d 1100. In *Concepcion*, the Supreme Court addressed the issue of whether the FAA preempted California's *Discover Bank* rule. *See Concepcion*, 131 S.Ct. at 1746. The Court concluded that the rule was preempted because "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Id.* at 1748. In particular:

> First, the switch from bilateral to class arbitration sacrifices the principal advantage of arbitration – its informality – and makes the process slower, more costly, and more likely to generate procedural morass than final judgment. *Id.* at 1751.
> Second, class arbitration requires procedural formality.... If procedures are too informal, absent class members would not be bound by the arbitration. *Id.* at 1751.
>
> Third, class arbitration greatly increases risks to defendants.... Defendants are willing to accept the costs of [uncorrected] errors in arbitration, since their impact is limited to the size of individual disputes, and presumably outweighed by savings from avoiding the courts. But when damages allegedly owed to tens of thousands of potential claimants are aggregated and decided at once, the risk of an error will often become unacceptable. Faced with even a small chance of a devastating loss, defendants will be pressured into settling questionable claims.

*Id.* at 1752.

Plaintiffs argue that the arbitration provision is procedurally unconscionable because it is "contained within a standard contract of adhesion." Opp. at 13. Specifically, the provision is part of a standard contract, drafted by BANA, who enjoys a superior bargaining position, and it was presented to Plaintiffs on a "take-it-or-leave-it basis after they were enrolled in Privacy Assist." *Id.* Further, the arbitration provision was not clearly marked in the materials that were allegedly mailed to Plaintiffs, but instead were buried in the middle of a paragraph entitled "Miscellaneous Provisions." *Id.* Plaintiffs argue that this procedural unconscionability or "surprise" is exacerbated

**United States District Court**
For the Northern District of California

by BANA's failure to provide Plaintiffs with a copy of the AAA rules. *Id.* (citing *Fitz v. NCR Corp.*, 118 Cal.App.4th 702, 721 (2004) (failure to attach arbitration rules adds to procedural unconscionability). Plaintiffs further argue that the failure to provide the AAA rules means that Plaintiffs were not apprised of crucial information about arbitrations, including the delegation provision, AAA filing fees and administrative fees. Opp. at 13-14. Plaintiffs point out that the fees for commercial arbitration are so high that they are "prohibitive" and that Plaintiffs "cannot be said to have expected an arbitration process which has  prohibitively expensive fees built into it." *Id.* at 14. Finally, Plaintiffs argue that the Washington D.C. venue-selection provision is unconscionable.

Intersections responds that the forum selection provision is enforceable under California law. Reply at 12 (citing *Intershop Communications AG v. Superior Court*, 104 Cal. App  4th 191, 198 (2002) (holding that "forum selection clause is presumed valid and will be enforced unless the plaintiff shows that enforcement of the clause would be unreasonable under the circumstances of the case."). Intersections also argues that Plaintiffs' argument is premised upon a fundamental misunderstanding about how commercial arbitration works in the consumer context. Intersections points out that there are special rules that complement the AAA's standard commercial arbitration rules in consumer arbitration. *See* Def's Reply at 15 (citing Rigali Decl., Ex. 2 at 30). These rules provide a separate fee schedule, which makes arbitration costs more reasonable for consumers. As such, Intersections argues that Plaintiffs offer no reliable evidence that these fees are unconscionable, particularly when compared with the $350 filing fee that is required to file a federal complaint. *Id.*

Plaintiffs also argue that the arbitration provision is substantively unconscionable. Substantive unconscionability focuses on whether the terms of an agreement are so one-sided as to "shock the conscience." *Soltani v Western & Southern Life Ins. Co.*, 258 F.3d 1038, 1043 (9th Cir. 2001). Plaintiffs argue that "here the Washington D.C. venue requirement itself is enough to find the arbitration agreement unconscionable." Opp. at 14. In support of their argument, Plaintiffs cite *Aral v. Earthlink, Inc*., 134 Cal. App. 4th 544, 558-562 (2005). There, the court invalidated an analogous arbitration provision stating: "We believe that a forum selection clause that requires a consumer to travel 2,000 miles to recover a small sum is not reasonable. . ." The Plaintiffs point out that in the present case, the two California Plaintiffs would be required to travel farther than that,

United States District Court
For the Northern District of California

1  and would also be required to pay a filing fee of over $700[3] in order to recover at most a few

2  hundred dollars.  Plaintiffs argue that the forum clause, coupled with the filing fee of over $700 is

3  "unconscionably one-sided such that it shocks the conscience."  Opp. at 14 (citing *Armendariz*, 24

4  Cal.4th at 107 (finding fees of $500 and up unconscionable).

5        The problem with Plaintiff's unconscionability position, however, is that there is no evidence

6  of *substantive* unconscionability.  In order to find this agreement substantively unconscionable, the

7  Court would have to conclude that the Terms of Use are so "one-sided as to shock the conscience."

8  Other than the forum selection clause, on these facts, the Court cannot so find.  However, the Court

9  can, in these circumstances, find the forum selection provision invalid and the remainder of the

10 arbitration clause valid.  The Court so finds, and severs the forum selection clause.  The need to

11 travel to Washington D.C. to litigate a claim of, at most, a couple of hundred dollars, shocks the

12 conscience.  However, the rest of the arbitration clause is valid.

13 **IV.    CONCLUSION**

14       For the foregoing reasons, the Defendant's Motion to Stay Litigation and Compel Arbitration

15 is GRANTED IN PART.  Because there exists a material factual dispute as to whether Plaintiff

16 Richard Albaugh in fact consented to enter into a contract with Defendants, the Court will hold a

17 bench trial, in accordance with the parties' agreement at oral argument on the Motion.

18       IT IS SO ORDERED.

19 Dated: October 7, 2011

20                                        _____
21                                        JOSEPH C. SPERO
                                         United States Magistrate Judge

22

23

24

25

26

27

28

---

[3]As stated above, from Intersections' reply, it is not clear that the Plaintiffs are correct as to the filing fee in this context.

16