United States District Court
For the Northern District of California

1
2
3
4
5
6
7           UNITED STATES DISTRICT COURT
8           NORTHERN DISTRICT OF CALIFORNIA
9
10   STEVEN M. CHAVEZ,                        No. C-10-0653 JCS
11              Plaintiff,                    **ORDER RE DEFENDANTS' MOTION TO
            v.                                DISMISS THIRD AMENDED
12                                            COMPLAINT**
     BANK OF AMERICA CORPORATION
13   ET. AL.,                                 **[Docket No. 122]**
14              Defendants.
15   _____/
16
17   **I.    INTRODUCTION**
18          Plaintiff Steven Chavez ("Plaintiff") filed a class action complaint against Bank of America
19   Corporation, FIA Card Services, National Association, Intersections Inc., Bank of America, N.A
20   (hereafter "Defendants") on February 16, 2010, alleging that Defendants had enrolled him in an
21   identity theft protection and credit monitoring service called "Privacy Assist" without his knowledge
22   or consent.  Subsequently, Plaintiffs filed a Third Amended Complaint ("TAC") adding additional
23   plaintiffs, (Patricia Vanhorn, Richard Albaugh, Patrick Mulcahy, hereafter "Plaintiffs") and
24   removing Steven Chavez as Plaintiff.  The TAC asserts claims under the California Business and
25   Professions Code §17200, *et. seq*., Consumer Legal Remedies Act ("CLRA"), § 1750 *et seq*., the
26   Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693, *et. seq*., as well as common law unjust
27   enrichment and conversion claims.  The parties have consented to the jurisdiction of the undersigned
28   magistrate judge pursuant to 28 U.S.C. § 636(c).

Defendants Bank of America, N.A. and FIA Card Services filed a Motion to Dismiss Third Amended Complaint. *See* Docket No. 122.[1]  In the Motion, Defendants assert that all of Plaintiffs' claims in the Third Amended Complaint are defective for failure to state a claim upon which relief can be granted and based upon the "law of the case" doctrine.  Plaintiffs oppose the motion.

For the reasons stated below, the Defendants' Motion to Dismiss is GRANTED IN PART AND DENIED IN PART.  The Defendants' Request for Judicial Notice is DENIED.[2]

## II.    BACKGROUND

### A.    The Allegations of the Third Amended Complaint

Plaintiff has brought this action against Defendants Bank of America Corporation (BAC), FIA Card Services, N.A. ("FIA"), Bank of America, N.A. ("BANA") and Intersections, Inc., for unfair competition, violation of the Consumers Legal Remedies Act, violation of the Electronic Funds Transfer Act, conversion and unjust enrichment.  All three Plaintiffs assert claims for violation of the UCL, unjust enrichment and conversion.  Plaintiff Vanhorn alone asserts a violation of the EFTA, and Albaugh alone claims a violation of the CLRA.  Plaintiffs represent "all persons who had funds electronically transferred from their credit and debit accounts for 'Privacy Assist' without their explicit knowing authorization or permission in the four years preceding the filing of this Complaint and continuing until final disposition of this action."  TAC ¶ 24.

The allegations specifically pertaining to each Plaintiff are as follows:

Patricia Vanhorn.  Patricia Vanhorn alleges that she had a checking account with BANA. *Id.* ¶ 33.  She alleges that she was charged for several months of the Privacy Assist service before she noticed the charges after incurring overdraft charges as a result of the unauthorized charges.  *Id.* She called BANA to ask about the charges.  *Id.*  She alleges that she was not informed that it was an

_____

[1]Intersections has been dismissed from this lawsuit pursuant to a settlement.

[2]On a 12(b)(6) motion to dismiss it is not appropriate to consider matters outside of the pleadings, unless they are referenced in the Complaint or are matters of public record.  Defendants seek judicial notice of the "Privacy Assist Terms of Use."  To consider the document would impermissibly convert this motion to one for summary judgment. Accordingly, the request for judicial notice is denied.

2

United States District Court

For the Northern District of California

add-on service, nor was she informed as to who was the provider of the service. *Id.* ¶ 34. Some time later, Vanhorn closed her BANA account. *Id.*, ¶ 35. She called BANA again in order to ask a BANA associate about the Privacy Assist Charges, and was told that BANA had nothing to do with Privacy Assist so they could not issue Privacy Assist refund requests; she would have to contact the Privacy Assist service provider directly. *Id.* ¶ 35. She was given an 800 number for the Privacy Assist service provider. *Id.* ¶ 35. When she called the 800 number, a customer service representative identified himself as being with Privacy Assist, which "worked with" BANA *Id.* ¶ 36. Vanhorn alleges that she asked for a refund of the Privacy Assist charges, and was told that she could either have a one month refund or wait for a copy of her recorded voice authorization for the service. She opted to wait for the recording because she was certain that she had not enrolled in Privacy Assist. *Id.* ¶ 37. She alleges that as of the date of the TAC, she had not yet received a copy of the recording. *Id.* ¶ 38.[3]

　　Richard Albaugh.　Plaintiff Albaugh alleges that he has a credit card "issued and administered by FIA." *Id.* ¶ 39. He alleges that he was charged for several months of the Privacy Assist service before he noticed the charges on his account statement in August 2010. *Id.* ¶¶ 39-40. Albaugh called a Privacy Assist phone number that he found online and spoke to a supervisor, who told him that he had signed up for Privacy Assist several months earlier via an inbound call. *Id.* ¶ 42. Albaugh alleges that he does not remember calling Privacy Assist, Intersections, BANA or FIA for any reason. *Id.* ¶ 43. He claims that he "does not have any recollection of any communications with Privacy Assist prior to noticing the charges on his credit card statement, and did not affirmatively or knowingly authorize his enrollment in the Privacy Assist service." *Id.* ¶ 46. Albaugh alleges that he asked for a refund of the Privacy Assist charges, and was told that Privacy Assist would refund half the charges. He refused this offer, and canceled Privacy Assist the same

---

[3]Defendants point out in their Motion that "Vanhorn does not allege any interaction with FIA, or that FIA played any role in her Privacy Assist transaction. Motion at 4.

day. *Id.* at 45.  Albaugh does not allege any interaction with BANA or FIA related to Privacy Assist.

Patrick Mulcahy.  Plaintiff Mulcahy has a small business credit card "issued and administered by FIA." *Id.* ¶ 49.  He was charged for 16 months of Privacy Assist services.  *Id.* ¶¶ 49-50.  Mulcahy recalls that he received a telephone solicitation "from BANA around the time the charges for Privacy Assist commenced," but he alleges that the "sales pitch was incredibly misleading and deceptive." *Id.* ¶ 52.  He does not allege what was said to him during the call nor are there specific allegations as to how it was misleading or deceptive.  He alleges that he subsequently received mail from Privacy Assist, but alleges that it was not "clearly labeled as such" and that he had "no way of knowing it was related to a monthly-fee service." *Id.* ¶ 53.  When he finally noticed the Privacy Assist charges on his statement, Mulcahy called Privacy Assist and was told that he could receive a refund of two months of charges.  *Id.*, ¶ 51.  Mulcahy alleges that he was told that "if he had issues with BANA, he would have to contact BANA." *Id.*  He does not allege that he called BANA.  He also alleges no interaction with or conduct by FIA in connection with Privacy Assist.

**B.      Procedural Background**

On February 16, 2010, original plaintiff Steven Chavez filed this putative class action lawsuit against defendants Bank of America Corporation, Intersections and FIA regarding allegedly unfair charges for the Privacy Assist "identity theft protection and credit monitoring service."  Compl. ¶ 2, Docket No. 1.  Plaintiff Chavez asserted violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL"); the CLRA, Cal. Civ. Code §§ 1750 *et. seq.*; and the Federal Electronic Funds Transfer Act, 15 U.S.C. § 1693 ("EFTA"); as well as unjust enrichment and conversion.  He added new defendant BANA in a First Amended Complaint.  *See* FAC, Docket No. 41.

On January 10, 2011, the Court granted Defendants' motion to dismiss the First Amended Complaint as to Bank of America Corporation and FIA, with leave to amend.  Order, Docket No. 62.  On February 2, 2011, Chavez filed a Second Amended Complaint, which dropped Bank of

America Corporation as a defendant.  SAC, Docket No. 66.  The counts remained the same as in the previous pleadings.  Defendants moved to dismiss, but later stipulated to take the motion off calendar while Chavez was substituted by other named plaintiffs.  *See* Docket No. 83.

On April 18, 2011, Plaintiffs filed a Third Amended Complaint, which introduced new plaintiffs Vanhorn, Mulcahy and Albaugh.  These plaintiffs allege the following:  "Privacy Assist is a service that has three levels of identity protection available to BANA customers," including but not limited to free unlimited access to credit reports, internet monitoring of personal information from the credit bureaus, identity theft insurance, and credit monitoring and alerts.  TAC ¶ 6.  Intersections is the company that provides the Privacy Assist service to BANA customers.  *Id.*, ¶ 3.  Plaintiffs allege that "FIA is part of Bank of America Corporation's 'Bank of America Card Services' organization, which provides credit cards … including issuing and administering credit cards on behalf of BANA."  *Id.*, ¶ 2.  Plaintiffs further allege that BANA's website "indicates that FIA is directly responsible for the Privacy Assist service."  *Id.*, ¶ 4.

On October 7, 2011, the Court granted Intersections' motion to stay the litigation pending arbitration as against plaintiffs Vanhorn and Mulcahy, finding that plaintiffs Vanhorn and Mulcahy consented to enroll in Privacy Assist and to the written terms of the Privacy Assist agreement:

> There is no disputed issue of material fact with respect to whether Plaintiffs VanHorn and Mulcahy consented to a contract with Defendants by phone. […] As a result of their consent to the contract, and the receipt of the terms, VanHorn and Mulcahy are bound by the arbitration provision.

"Order Granting in Part Defendant Intersection Inc.'s Motion to Stay Litigation Pending Arbitration" at 11:19-20, 12:12-13.

In connection with its ruling on the motion, the Defendants submitted a voice recording of Vanhorn's enrollment to the Court.  The Court reviewed the voice recording and concluded that, "[d]uring this telephone conversation, Vanhorn agree[d] to enroll in Privacy Assist."  *Id.* at 10:5-6.  The Court further concluded that Vanhorn received the written Terms of Use for Privacy Assist, which "explicitly … identifies Intersections as the provider of the service being offered to BANA's

United States District Court
For the Northern District of California

1   customers." *Id.* at 8:2-4, 12:12-13.  The Court also concluded, based on the evidence presented on

2   the motion, that Plaintiff "Mulcahy did in fact consent to and enroll in[] Privacy Assist, including the

3   agreement to arbitrate" contained in the written Terms of Use that were sent to him.  *Id.* at 11:15-17.

4   The Court applied a summary judgment standard to the Motion.

5          With respect to Plaintiff Albaugh, the Court found that a factual dispute regarding whether

6   he consented to enroll in Privacy Assist precluded a finding that he was required to arbitrate his

7   claim. *Id.* at 16:15-17.  The Court ordered a bench trial on that issue, to take place on January 17,

8   2012.

9          On October 27, 2011, Plaintiffs voluntary dismissed Intersections, leaving only defendants

10  BANA and FIA in the lawsuit.  The Court subsequently vacated the bench trial date.

11  **III.    LEGAL STANDARDS**

12          **A.    Motion to Dismiss, 12(b)(6)**

13          A complaint may be dismissed for failure to state a claim for which relief can be granted

14  under Federal Rule of Civil Procedure 12 (b)(6).  Fed. R. Civ. P 12 (b)(6).  A complaint must

15  "contain either direct or inferential allegations respecting all the material elements necessary to

16  sustain recovery under *some* viable legal theory." *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 127 S.

17  Ct. 1955, 1969 (2007) (quoting *Car Carriers, Incl v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.

18  1984) (internal quotations omitted; emphasis in original).

19          While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed
            factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to
20          relief" requires more than labels and conclusions, and a formulaic recitation of the elements
            of a cause of action will not do. Factual allegations must be enough to raise a right to relief
21          above the speculative level on the assumption that all the allegations in the complaint are true
            (even if doubtful in fact).
22

23  *Id.* at 1964-65.  For purposes of resolving the motion, courts accept all allegations of material fact as

24  true and construe the complaint in the light most favorable to the nonmoving party.  *Nat'l Wildlife*

25  *Fed'n v. Espy*, 4 F.3d 1337, 1380 (9th Cir. 1995).

26

27

28                                               6

**United States District Court**
For the Northern District of California

**B.      Law of the Case**

The "law of the case" doctrine precludes a court from reconsidering an issue already decided by the same court or by a higher court in the identical action. *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir.), *cert. denied*, 508 U.S. 951 (1993). "Law of the case" is a discretionary doctrine "created to maintain consistency and avoid reconsideration, during the course of a single continuing lawsuit, of those decisions that are intended to put a matter to rest. Law of the case is not synonymous with preclusion by final judgment." *Pit River Home and Agric. Coop. Ass'n v. United States*, 30 F.3d 1088, 1097 (9th Cir. 1994) (citing 18 Wright, Miller & Cooper, at 798 (1981), 603 (Supp.1993).

Under the law of the case doctrine, a prior decision on a factual or legal issue must be followed in all subsequent proceedings in the trial court or on a later appeal in the appellate court, unless 1) the court is presented with substantially additional or different evidence, 2) there has been a change in controlling authority applicable to the particular issue, or 3) the prior decision was clearly erroneous and would work a manifest injustice. *In re Benny*, 81 F.3d 91, 94 (9th Cir. 1996); *United States v. Garcia*, 77 F.3d 274, 276 (9th Cir. 1996); *Hegler v. Borg*, 50 F.3d 1472, 1475 (9th Cir.), *cert. denied*, 516 U.S. 1029 (1995); *Pit River, supra*, at 1096–97.

The law of the case doctrine is not a rule of substantive law, but a rule of practice designed to protect both the court and the litigants from repeated reargument of issues already decided. 18 Charles Alan Wright et al., Federal Practice and Procedure § 4478, at 790 (1981) (quoting *Messinger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912)). Further, the law of the case doctrine applies not just to issues decided explicitly, but includes matters that were decided by necessary implication in the court's prior ruling. *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1393 (9th Cir.), *cert. denied*, 516 U.S. 955 (1995); 1B James W. Moore & Jo Desha Lucas, Moore's Federal Practice ¶ 0.404[10], at II–68 (1996). The Ninth Circuit has explained that even "summary" treatment of a legal or factual issue becomes the law of the case. *Leslie Salt*, 55 F.3d at 1392 (citing *Alliance for Cannabis Therapeutics v. DEA*, 15 F.3d 1131, 1135 (D.C.Cir.1994)). The Ninth Circuit has adhered to the law of the case even where a prior ruling was "cryptic and somewhat

United States District Court

For the Northern District of California

1  ambiguous." *See e.g., Hanna Boys Ctr. v. Miller*, 853 F.2d 682, 687 (9th Cir. 1988). Whether a

2  previous proceeding's ruling becomes the law of the case turns on whether the court decided the

3  issue or rule of law, not on how well it justified its decision. *Christianson v. Colt Indus. Operating*

4  *Corp.*, 486 U.S. 800, 817, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988).

5  **III.   ANALYSIS**

6      **A.     Whether Any Claims Should be Dismissed Under the Law of the Case Doctrine**

7          Defendants argue that Plaintiff VanHorn's and Mulcahy's claims must be dismissed under

8  the law of the case doctrine because the Court has previously found that these Plaintiffs consented to

9  enroll in Privacy Assist. In connection with the Defendants' Motion to Stay Litigation pending

10 Arbitration, this Court found: "There is no disputed issue of material fact with respect to whether

11 Plaintiffs VanHorn and Mulcahy consented to a contract with Defendants by phone." Order at

12 11:19-20. The Court further found that VanHorn and Mulcahy each received the written Terms of

13 Use for Privacy Assist, which "explicitly . . . identifies Intersections as the provider of the service

14 being offered to BANA's customers." *Id*. at 8:2-4.

15         Defendants argue that because each of the Plaintiff's claims is premised upon the notion that

16 they did not consent to enroll in Privacy Assist and/or that Defendants failed to describe their

17 affiliation with one another and with Intersections, that these claims must be dismissed because the

18 issues were decided by this Court. *See* TAC, ¶¶ 68-69. 89-90, 98, 102. The Court agrees.

19         With respect to the Unfair Competition Claim, the Plaintiffs allege that the Defendants

20 committed unlawful acts by signing up Plaintiffs for Privacy Assist without their express informed

21 and knowing consent, billing unauthorized EFT's for privacy Assist to the Plaintiffs' accounts, and

22 by failing to provide truthful, clear and conspicuous information regarding the nature and cost of the

23 goods or services. TAC ¶ 69. Plaintiffs allege that the Defendant BANA is liable for these acts

24 under a *respondeat superior* theory of liability. *Id*., ¶ 70. With respect to the EFTA, unjust

25 enrichment and conversion claims (claims 3-5), the allegations similarly flow from the allegation

26

27

28                                          8

United States District Court

For the Northern District of California

1   that there was no consent to enroll in the Privacy Assist program, nor was there a clear

2   understanding of Privacy Assist's terms and conditions. *Id.*, ¶¶ 76, 90, 98.[4]

3          With respect to Plaintiffs VanHorn and Mulcahy, the Court, applying a summary judgment

4   standard, concluded that there was no genuine issue of material fact on the question of whether

5   VanHorn and Mulcahy had consented to enroll in Privacy Assist.

6          As such, this Court concludes that the law of the case doctrine bars relitigating this issue.

7   Unless the Plaintiff comes forward with new or different evidence, or there is a change in the

8   controlling law, the Court sees no reason to allow Plaintiffs to litigate the identical issue twice in this

9   case. The Court made no such findings with respect to Plaintiff Albaugh, however. His claims are

10  not bared by law of the case.

11          **B.       Sufficiency of the Allegations of the Third Amended Complaint**

12          Plaintiffs' Third Amended Complaint ("TAC") contains five claims, one federal claim for

13  violations of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 (claim 3) and four state law claims

14  for violations of the Unfair Business Practices Act, Cal. Bus. & Prof. Code § 17200 (claim 1),

15  violations of the Consumer Legal Remedies Act, California Civil Code § 1750 (claim 2), and the

16  common law claims of Unjust Enrichment (claim 4) and Conversion (claim 5).

17          In the Motion to Dismiss, Defendants argue that the law of the case doctrine notwithstanding,

18  the Plaintiffs have failed to state a claim for relief as to each of the five claims in the TAC.

19          **1.       Whether Plaintiffs State a Claim for Unfair Competition (Claim One)**

20          California's UCL prohibits "unfair competition," which is defined as any "unlawful, unfair

21  or fraudulent business act or practice." To establish a violation of the UCL, a plaintiff may establish

22  a violation under any one of these prongs. To state a cause of action based on an unlawful business

23  act or practice under the UCL, a plaintiff must allege facts sufficient to show a violation of some

24  _____

25          [4]Claim 2, under the Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et. seq.*, is brought
    on behalf of Plaintiff Albaugh, not Plaintiffs Mulcahy and VanHorn. Claim 2, therefore, is unaffected
26  by the law of the case doctrine. The EFTA claim is brought on behalf of Plaintiff VanHorn only. *See*
    TAC, ¶ 86 ("Plaintiff Vanhorn realleges and incorporates each and every one of the allegations
27  contained in Paragraphs 1 through 85. . .").

28                                                    9

underlying law. *People v. McKale*, 25 Cal.3d 626, 635, 159 Cal.Rptr. 811, 602 P.2d 731 (1979).

"'Fraudulent,' as used in the statute, does not refer to the common law tort of fraud but only requires

a showing members of the public 'are likely to be deceived.'"  *Olsen v. Breeze*, 48 Cal.App.4th 608,

618, 55 Cal.Rptr.2d 818 (1996).  UCL claims premised on fraudulent conduct trigger the heightened

pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure.  *Kearns v. Ford Motor Co.*,

567 F.3d 1120, 1125 (9th Cir. 2009).  Finally, while there is disagreement among California courts

regarding the definition of "unfair" business practices, three tests have been applied, as the court in

*Phipps v. Wells Fargo* explains:

> In consumer cases, such as this, the California Supreme Court has not established a definitive test to determine whether a business practice is unfair. *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal.App.4th 247, 256, 106 Cal.Rptr.3d 46 (2010). A split of authority has developed among the California Courts of Appeal, which have applied three tests for unfairness in consumer cases. *Drum,* 182 Cal.App.4th at 256, 106 Cal.Rptr.3d 46.
>
> ...
>
> The test applied in one line of cases requires "that the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." *Drum*, 182 Cal.App.4th at 256, 106 Cal.Rptr.3d 46 (citing *Bardin v. Daimlerchrysler Corp.*, 136 Cal.App.4th 1255, 1260–1261, 39 Cal.Rptr.3d 634 (2006); *Davis v. Ford Motor Credit Co.*, 179 Cal.App.4th at 581, 595–596, 101 Cal.Rptr.3d 697 (2009); *Gregory v. Albertson's Inc.*, 104 Cal.App.4th 845, 854, 128 Cal.Rptr.2d 389 (2002).
>
> ...
>
> A second line of cases applies a test to determine whether the alleged business practice "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." Drum, 182 Cal.App.4th at 257, 106 Cal.Rptr.3d 46 (citing *Bardin*, 136 Cal.App.4th at 1260, 39 Cal.Rptr.3d 634; Davis, 179 Cal.App.4th at 594–595, 101 Cal.Rptr.3d 697)).
>
> ...
>
> The test applied in a third line of cases draws on the definition of "unfair" in section 5 of the Federal Trade Commission Act (15 U.S.C. § 45, subd. (n)), and requires that "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Drum*, 182 Cal.App.4th at 257, 106 Cal.Rptr.3d 46 (citing *Davis*, 179 Cal.App.4th 597–598, 101 Cal.Rptr.3d 697; *Camacho* v. *Automobile Club of Southern California*, 142 Cal.App.4th 1394, 1403, 48 Cal.Rptr.3d 770 (2006)).

10

1    2011 WL 302803, at *16 (E.D.Cal., Jan.27, 2011).

2                            **a.      Plaintiffs' VanHorn and Mulcahy**

3          Under the applicable standards discussed above, the Plaintiffs VanHorn's and Mulcahy's

4    UCL claim fails.  First, under the law of the case doctrine, as applied to Plaintiffs Vanhorn and

5    Mulcahy, there can be no claim for unfair business practices that is premised upon the allegation that

6    the Plaintiffs were signed up for Privacy Assist without their "express informed and knowing

7    consent."  TAC, ¶ 69.

8          With respect to the allegation that the Defendants "unfairly . . . conceal[ed] their charges for

9    Privacy Assist and falsely claim[ed] that the Defendants were not affiliated with one another" (TAC,

10   ¶ 68), the Court finds that this allegation fails to state a claim under the UCL because no Plaintiff

11   alleges any injury as a result of not being informed about the affiliation between Defendants and

12   Intersections.   Further, the Plaintiffs allege that "the charges for Privacy Assist" were contained in

13   their account statements.  TAC ¶ 33, 39-40, 49-50).  This claim, therefore, fails to state a claim as to

14   Vanhorn and Mulcahy.  However, the Court will permit Plaintiffs to amend this claim so that it is

15   not premised on lack of consent.  To the extent that Plaintiffs VanHorn and Mulcahy base this claim

16   on conduct other than lack of consent, *e.g.*, conduct that was deceptive or misleading, Plaintiffs may

17   attempt to amend the UCL claim to state a claim.

18                            **b.      Fraudulent Prong as to Plaintiff Albaugh**

19         With respect to Plaintiff Albaugh, his claim under the UCL fails with respect to the

20   fraudulent prong of the UCL.  In order to plead a claim for deceptive practice under the UCL, a

21   heightened pleading standard is applied.  There are none of the specifics required under FRCP 9(b).

22   *See* TAC ¶¶ 39-48.

23                            **c.      "Unfair" Prong as to Plaintiff Albaugh**

24         In order to state a claim under the unfair prong of the UCL, Plaintiff must allege facts

25   sufficient to establish that Defendants' business practice is unfair under any of the three tests applied

26

27

28                                                11

by California courts to UCL claims under the unfair prong.  Plaintiff Albaugh's allegations are sufficient under the "unfair" prong of the UCL.

### d. "Unlawful" Prong as to Plaintiff Albaugh

In order to state a claim under the UCL based on unlawful conduct, Plaintiff must allege facts sufficient to establish a violation of some law.  Plaintiff contends that he has alleged unlawful conduct on the basis of CLRA claim.  As discussed more fully below, Plaintiff  states a claim under the CLRA. Therefore, his UCL claim is properly based on the CLRA claim.

### 2. Whether Albaugh States a Claim for Violation of the CLRA (Claim Two)

Defendants argue that Plaintiff Albaugh fails to state a claim for violation of the CLRA.  The Court disagrees.

### a. Legal Standard

The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer [.]"  Cal. Civ.Code § 1770.  Pursuant to Cal. Civ.Code § 1780(a), "[a]ny consumer who suffers any damage as a result of" any of the types of conduct enumerated and declared unlawful by § 1770 may bring an action for damages, restitution and injunctive relief.  Cal. Civ.Code § 1780(a).  Therefore, an individual must prove he suffered damage to establish standing under the CLRA.

Indeed, "[a]n individual filing suit under the CLRA, including one bringing suit on behalf of a class of similarly situated consumers, must establish standing under the statute." *In re Actimmune Marketing Litigation*, 2009 U.S. Dist. LEXIS 103408 at *47, 2009 WL 3740648 (N.D.Cal., Nov. 6, 2009).  "[The CLRA] does not create an automatic award of statutory damages upon proof of an unlawful act.  Relief under the CLRA is specifically limited to those who suffer damage, making causation a necessary element of proof." *Wilens v. TD Waterhouse Group, Inc*., 120 Cal.App.4th 746, 755, 15 Cal.Rptr.3d 271 (2003).  Thus, to pursue a CLRA claim, a party must have been

United States District Court

For the Northern District of California

1   "exposed to an unlawful practice," and "some kind of damage must result." *Meyer v. Sprint*

2   *Spectrum L.P.*, 45 Cal.4th 634, 641, 88 Cal.Rptr.3d 859, 200 P.3d 295 (2009).

3          Courts have generally dismissed claims in which plaintiffs suffered no harm as a result of

4   defendants' conduct. *See, e.g., Wehlage v. EmpRes Healthcare, Inc.*, 2011 WL 2066625, at *5–6

5   (N.D. Cal., May 25, 2011) ("Plaintiff has not alleged that [Defendant] deceived her ... and that she

6   suffered damage as a result. Accordingly, the [c]ourt grants the [Defendant's] motion to dismiss

7   Plaintiff's CLRA claims."); *In re iPhone Application Litig.*, 2011 WL 4403963 at *9–10 (N.D. Cal.,

8   Sept.20, 2011) ("[p]laintiffs have not alleged any damage as a result of [d]efendants' alleged actions.

9   Therefore, [p]laintiffs' CLRA claim necessarily fails.") (quotations omitted).

10                    **b.        Application of the Law to the Facts**

11         Plaintiff Albaugh alleges that he was injured by the Defendants' unlawful practices because

12   he attempted to cancel Privacy assist and have fees refunded to no avail. Further, he alleges harm in

13   the form of overdraft charges to his bank account. TAC ¶¶ 83-84. Plaintiff Albaugh has standing to

14   pursue a CLRA claim and has stated a claim for relief under the liberal federal notice pleading

15   standards.

16                **3.        Whether Plaintiff Vanhorn States a Claim for Violation of the EFTA
                              (Claim Three)**

17

18         Plaintiff Vanhorn alleges that Defendants violated the federal Electronic Funds Transfer Act

19   ("EFTA"). The EFTA is a consumer rights statute, which establishes the rights, liabilities, and

20   responsibilities of participants (consumers, financial institutions, and intermediaries) in electronic

21   fund transfer systems. 15 U.S.C. § 1693. Plaintiff Vanhorn and the members of proposed class

22   allege that Defendants engaged in "unauthorized" transfers by debiting their bank accounts for the

23   Privacy Assist service. TAC ¶¶ 89, 90. Plaintiff contends the electronic fund transfers were made

24   without permission, without obtaining prior written authorization, without providing copies of the

25   purported authorization, and without providing reasonable notice of the amount to be transferred or

26   the scheduled date of the transfer. *Id.* ¶¶91, 92.

27

28                                                     13

United States District Court

For the Northern District of California

Defendants argue that "only Vanhorn asserts a violation of the EFTA."  Motion at 9.
Defendants reiterate their "law of the case" argument, namely, that Plaintiff Vanhorn consented to
enroll in Privacy Assist and received the terms and therefore, she cannot now complain of
unauthorized charges or electronic debits from her account.  Motion at 9.

Plaintiff responds that this issue was not decided by the Court in this case.  Specifically,
Plaintiffs cite to the transcript of the hearing on Intersection's Motion to Arbitrate during which the
Court stated: "I don't care about, you know, the other stuff, whether or not it's fair to charge her $39
a month or $12 a month or whatever it is, whether that [sales script] was read too quickly, or
whether it [acceptance] was done by – procured inappropriately.  That's a down-the-road question."
Opp. at 10 (citing Tr. at 20:13-17).  Plaintiffs argue that with the exception of the law of the case
argument, Defendants offer no "plausible reason" why Plaintiff Vanhorn's claims under the EFTA
should be dismissed.  *Id.*  Plaintiff Vanhorn alleges that, as required by the EFTA, the Defendants
debited funds from her account without her permission.  *Id.* (citing TAC ¶¶ 89-90).

The Court finds that law of the case precludes Plaintiff Vanhorn's EFTA claim.  The Court's
Order finding that Plaintiff Vanhorn consented to enroll in the Privacy Assist program, and finding
that the Plaintiff had received the terms in the mail, means that the issue of whether she gave
permission for electronic debits from her account was necessarily decided in an earlier proceeding in
this same case.  The fact that other possibilities were discussed at the hearing on the Motion, or that
the Court's tentative ruling at oral argument referred to "down-the -road" questions, does not alter
the Court's ruling, which is contained in its written Order dated October 7, 2011.  The Plaintiff's
EFTA claim must be DISMISSED.

### 4.    Unjust Enrichment (Claim Four)

Defendants argue that as to Plaintiffs Vanhorn and Mulcahy, there can be no unjust
enrichment because this Court has previously ruled that these Plaintiffs have an express binding
agreement.  Defendants argue further that "[f]or all Plaintiffs, including Albaugh, it cannot be unjust
to charge fees that were repeatedly disclosed on monthly statements and for services that no Plaintiff

United States District Court

For the Northern District of California

alleges he or she failed to receive." Motion at 10. The Court agrees with respect to Plaintiffs Vanhorn and Mulcahy, but disagrees with respect to Plaintiff Albaugh.

### a.  Legal Standard

Although there is some disagreement among California courts as to whether unjust enrichment may be asserted as a stand-alone claim under California law, this Court has recognized that the confusion is largely semantic. *Nordberg v. Trilegant Corp.*, 445 F.Supp.2d 1082, 1100 (N.D .Cal. 2006). The court in *Nordberg* explained that even though California law may not recognize unjust enrichment as an independent claim, such a claim may be understood as one for restitution, which is recognized under California law. *Id.* Therefore, the Court considers whether Plaintiff Albaugh's fourth claim, styled as a claim for unjust enrichment, states a claim for restitution.

To state a claim for restitution, a plaintiff "must plead 'receipt of a benefit and the unjust retention of the benefit at the expense of another.'" *Walters v. Fidelity Mortgage of California*, 2010 WL 1493131 at * 12 (E.D.Cal., April 14, 2010) (quoting *Lectrodryer v. Seoulbank*, 77 Cal.App.4th 723, 726 (2000)). "Even when a person has received a benefit from another, he is required to make restitution 'only if the circumstances of its receipt or retention are such that, as between the two persons, it is unjust for him to retain it.'" *Ghirardo v. Antonioli*, 14 Cal.4th 39, 51 (1996) (quoting Restatement of Restitution, § 1, cmt. c). In *McBride v. Boughton*, the court explained that "restitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason." *McBride*, 123 Cal.App.4th at 388, 20 Cal.Rptr.3d 115. To prevail on a claim for restitution, a plaintiff need not establish bad faith on the part of the defendant, so long as the recipient of the funds was not entitled to the funds. *See Lectrodryer*, 77 Cal.App.4th at 726, 91 Cal.Rptr.2d 881.

### b.  Application of the Law to the Facts

Plaintiff Albaugh has alleged that Defendants have unjustly retained funds to which Plaintiff was entitled in the form of fees he incurred as a result of the Defendants' unlawful enrollment of him

United States District Court
For the Northern District of California

1  in Privacy Assist.  *See* TAC ¶ 48.  Therefore, Plaintiff Albaugh states a claim for restitution.

2  Plaintiffs Vanhorn and Mulcahy, however, fail to state a claim because of the Court's previous

3  finding regarding their consent, discussed above.

4              **5.        Conversion (claim 5)**

5          Defendants argue that the conversion claim on behalf of Plaintiff Vanhorn[5] must be

6  dismissed because it is well-settled in California, that a claim against a bank for conversion will not

7  lie because the tort of conversion requires a plaintiff to plead ownership of some specific property,

8  and that Plaintiff Vanhorn has not and cannot do so as matter of law.  Defendants contend that

9  Plaintiff Vanhorn does not "own" the funds in her account.  Rather, she owns a contractual right to

10  demand those funds from the bank, and any failure to comply by the bank gives rise to a contractual

11  claim, not a tort claim.  *See e.g., Gutierrez v. Wells Fargo Bank N.A.*,622 F.Supp.2d 946, 956 (N.D.

12  Cal. 2009) (Alsup, J.) ("A bank may not be sued for conversion of funds deposited with the bank.").

13          In response, Plaintiffs argue VanHorn, the only deposit account holder at the bank, has pled a

14  sufficient claim for conversion and that the Defendants' argument has no applicability to Plaintiffs

15  Albaugh and Mulcahy.  Second, Plaintiffs argue that the tort of conversion can be pled by pleading a

16  right to possession, rather than ownership, and that, even if title to the funds passes to the banks

17  when the funds are deposited, Plaintiff VanHorn still retain a right to possess those funds at any

18  time, and the withholding of those funds can amount to a conversion.  *See Bank Brussels Lambert v.*

19  *Credit Lyonnais*, 2000 WL 174955, at *6 (S.D.N.Y.2000) ( "[P]laintiffs, to sustain a conversion

20  claim, need not establish legal ownership of the funds in question: it is sufficient if they establish an

21  immediate right of possession.").  Plaintiffs also rely on *In re Checking Overdraft Litig.*, 694 F.

22  Supp.2d 1302, 1323 (S. D. Fla. 2010), claiming that the district court there applied California law to

23

24

25          [5]Defendants also argue that the conversion claims on behalf of both Vanhorn and Mulcahy fail
26  due to the Court's earlier finding that both Plaintiffs consented to the Privacy Assist agreement, which
    specifies that monthly fees will be charged for the service.  Thus, there is no wrongful withholding of
27  the money that these Plaintiffs agreed to pay for the service.

28                                                  16

decide the question of whether a conversion action is available for wrongful debiting of funds from a customer's account because it interfered with the plaintiff's right to possess those funds.

The Court is not persuaded by the Plaintiffs' argument as to Plaintiff VanHorn. First, California law is well-settled in this area that a claim against the bank for conversion will not lie. Because title to a deposit passes immediately to the bank upon deposit, a depositor has no conversion claim against a bank under California law. *See Morse v. Crocker National Bank*, 142 Cal.App.3d 228, 232, 190 Cal.Rptr. 839 (1983). As one district court in this Circuit has explained: "An exception to this general rule applies in the case of special deposits. In the case of a special deposit (typically those which are not commingled), as opposed to a general deposit, a bank may assume the role of trustee over deposited funds while title remains with the 'depositor'." In the case of a special deposit, a cause of action lies for conversion." *Cruz v. U.S.*, 219 F.Supp.2d 1027 (N.D. Cal. 2002) (Breyer, J.). In the present case, no such exception is pled, nor could it in this case. Moreover, the out of state authorities cited by the Plaintiff for the opposite position are contrary to well-settled law and thus are not persuasive.

The Court is not convinced, however, that Plaintiff Albaugh's conversion claim must fail. With respect to Albaugh's conversion claim, Defendants argue in one sentence in their Motion that "Albaugh, like the other Plaintiffs, admits that his monthly statements showed the payments for Privacy Assist, and fails to allege that he did not receive the Privacy Assist service." Motion at 11. Defendants' argument misses the point of Plaintiff Albaugh's claim. Plaintiff does not contend that he was charged for a service that he never received; rather, he alleges that he never agreed to receive and be charged for the service on his credit card. The Court has not made any factual findings or ruled on this issue with respect to Plaintiff Albaugh. Further, Albaugh is not a deposit account holder, thus the authorities precluding a conversion claim against a bank are inapposite.

With respect to Plaintiff whom the Court has previously found to have consented to Privacy Assist, the conversion claim is dismissed with leave to amend if Plaintiff has facts that could support

United States District Court
For the Northern District of California

a claim for conversion that are not based upon consent. For the reasons stated above, Plaintiff

Vanhorn's conversion claim is dismissed with prejudice.

### 6. Claims Against FIA

Defendants also move to dismiss all claims against FIA, arguing that there are no specific

allegations against FIA that would entitle Plaintiffs to relief.

In response, Plaintiffs argue that their claims may proceed against Defendant FIA, which is

not a bank and "clearly faces liability for a claim of conversion of Plaintiffs' funds." Pl.'s Opp. at

11, n. 8 (citing *Permobil, Inc. v. American Express Travel Related Servcs. Co.*, 571 F. Supp. 2d 825,

840-41 (M.D. Tenn. 2008) (denying motion to dismiss where plaintiff alleged claim of conversion

against credit card company that refused to refund unauthorized charges, even though plaintiff had

paid credit card bill containing unauthorized charges). Defendants respond in their Reply that the

claims against FIA in the Second Amended Complaint were dismissed by the Court for failure to

plead any facts demonstrating wrongful acts on the part of FIA. Reply at 7.

In the Court's Order dismissing the First Amended Complaint with leave to amend, the Court

found that there were no factual allegations specifically pertaining to FIA. *See* Dkt. No. 62, Order at

7. The Third Amended Complaint, however, does contain allegations against FIA. Specifically,

Plaintiffs allege that both BANA and FIA have charged their customers for the Privacy Assist

Service and that fees are levied by the credit card company (as to Plaintiff Albaugh) when the credit

card goes over the limit. TAC ¶ 11. The TAC alleges that the fraudulent charges were made on

Plaintiff Albaugh's FIA card, and that FIA assessed him an overage fee. *Id.*, ¶¶ 39-40, 49. These

allegations state a claim against FIA, consistent with the analysis of the individual claims discussed

above.

## IV.    CONCLUSION

1    The Motion to Dismiss is GRANTED as to all claims brought on behalf of Plaintiffs

2    Vanhorn and Mulcahy.  The Plaintiffs will be permitted to amend the Complaint as to Plaintiffs

3    VanHorn and Mulcahy consistent with this Order and the Court's prior finding of consent as to

4    Plaintiffs VanHorn and Mulcahy.  The Motion is DENIED as to claims filed on behalf of Plaintiff

5    Albaugh except that motion to dismiss the UCL claim to the extent that it is based on the

6    "fraudulent" prong is GRANTED WITH LEAVE TO AMEND.

7    IT IS SO ORDERED.

8    Dated: May 4, 2012

9

10   _____
     JOSEPH C. SPERO
11   United States Magistrate Judge

**United States District Court**
For the Northern District of California

19